# EXHIBIT A

CAUSE NO. 202003855

COPY OF PLEADING PROVIDED BY PLT

RECEIPT NO: 876624  TRACKING NO: 73716504
EML

| Plaintiff:<br>FIUME, JIME<br>vs.<br>Defendant:<br>DI ANGELO PUBLICATIONS INC | In The 270th<br>Judicial District Court of<br>Harris County, Texas<br>201 CAROLINE<br>Houston, Texas |
|---|---|

## CITATION CORPORATE

**THE STATE OF TEXAS**
**County of Harris**

**To:    DI ANGELO PUBLICATIONS INC (TEXAS CORPORATION) BY SERVING ITS REGISTERED AGENT**
**DI ANGELO CORPORATION (DBA)  OR WHEREVER ITS REGISTERED AGENT MAY BE FOUND**
**4265 SAN FELIPE SUITE 1100, HOUSTON TX 77027**

Attached is a copy of: PLAINTIFF'S ORIGINAL PETITION

This instrument was filed on January 21, 2020 in the above cited cause number and court.  The instrument attached describes the claim against you.

**YOU HAVE BEEN SUED.**  You may employ an attorney.  If you or your Attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration date of 20 days after you were served this citation and petition, a default judgment may be taken against you.

This citation was issued on January 23, 2020, under my hand and seal of said court.

Issued at the request of:

Sternfels, Melissa
1415 LOUISIANA ST. 36TH FLOOR
HOUSTON, TX  77002
713-223-5181
Bar Number: 24037181



Marilyn Burgess, District Clerk

Harris County, Texas
201 CAROLINE  Houston Texas 77002
(PO Box 4651, Houston, Texas 77210)

Generated By:CHANCESAS OUGRAH

Tracking Number: 73716504

EML

## CAUSE NUMBER: 202003855

| | |
|---|---|
| **PLAINTIFF: FIUME, JIME** | **In the 270th** |
| **vs.** | **Judicial District Court of** |
| **DEFENDANT: DI ANGELO PUBLICATIONS INC** | **Harris County, Texas** |

### OFFICER - AUTHORIZED PERSON RETURN

Came to hand at _____ o'clock ___. M. on the _____ day of _____, 20_____. Executed at

(Address)_____
in

_____ County at o'clock ___. M. On the _____ day of _____, 20_____, by

Delivering to _____defendant, in person, a true copy of this Citation
together with the accompanying _____ copy (ies) of the «Attachment». Petition attached thereto and I endorsed on said
copy of the Citation the date of delivery.

To certify which I affix my hand officially this _____day of _____, 20.

Fees $_____

_____                    By_____
             Affiant                                                             Deputy

On this day, _____, known to me to be the person whose signature
appears on the foregoing return, personally appeared. After being by me duly sworn, he/she stated that this citation was
executed by him/her in the exact manner recited on the return.

SWORN TO AND SUBSCRIBED BEFORE ME, On this _____ day of _____, 20__.

_____
Notary Public

Delivered 1-29-20

Receipt Number: 876624
Tracking Number: 73716510

EML
**COPY OF PLEADING PROVIDED BY PLT**

CAUSE NUMBER: 202003855

| | |
|---|---|
| PLAINTIFF: FIUME, JIME | In the 270th Judicial |
| vs. | District Court of |
| DEFENDANT: DI ANGELO PUBLICATIONS INC | Harris County, Texas |

CITATION

THE STATE OF TEXAS
County of Harris

TO: DI ANGELO SEQUOIA AKA SEQUOIA SCHMIDT   OR AT WHATEVER LOCATION SHE MAY BE FOUND

4265 SAN FELIPE SUITE 1100

HOUSTON TX 77027

    Attached is a copy of PLAINTIFF'S ORIGINAL PETITION.

This instrument was filed on January 21, 2020, in the above numbered and styled cause
on the docket in the above Judicial District Court of Harris County, Texas, in the
courthouse in the City of Houston, Texas. The instrument attached describes the claim
against you.

    YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not
file a written answer with the District Clerk who issued this citation by 10:00 a.m.
on the Monday next following the expiration of twenty days after you were served this
citation and petition, a default judgment may be taken against you.

    ISSUED AND GIVEN UNDER MY HAND and seal of said Court, at Houston, Texas, this
January 23, 2020.



*Marilyn Burgess*
Marilyn Burgess, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002

Generated By: CHANCESAS OUGRAH

Issued at request of:
Sternfels, Melissa
1415 LOUISIANA ST. 36TH FLOOR
HOUSTON, TX  77002
713-223-5181

Bar Number: 24037181

Tracking Number: 73716510
EML

CAUSE NUMBER: 202003855

| | |
|---|---|
| PLAINTIFF: FIUME, JIME | In the 270th |
| vs. | Judicial District Court |
| DEFENDANT: DI ANGELO PUBLICATIONS INC | of Harris County, Texas |

OFFICER/AUTHORIZED PERSON RETURN

Came to hand at _____o'clock ____. M., on the _____ day of _____, 20_____.

Executed at (address) _____

in _____ County

at _____ o'clock ____. M., on the _____ day of _____, 20 _____,

by delivering to _____ defendant,

in person, a true copy of this

Citation together with the accompanying _____ copy(ies) of the _____ Petition

attached thereto and I endorsed on said copy of the Citation the date of delivery.

To certify which I affix my hand officially this _____ day of _____, 20 _____.

FEE:  $ _____

_____ of _____

County, Texas

_____    By: _____
          Affiant                                    Deputy

On this day, _____, known to me to be

the person whose signature

appears on the foregoing return, personally appeared.  After being by me duly sworn,
he/she stated that this citation was executed by him/her in the exact manner recited
on the return.

SWORN TO AND SUBSCRIBED BEFORE ME on this _____ of _____, 20 _____

_____
          Notary Public

1/21/2020 4:08 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 40144755
By: C Ougrah
Filed: 1/21/2020 4:08 PM

CAUSE NO. _____

| | | |
|---|---|---|
| JIME FIUME | § | IN THE DISTRICT COURT OF |
|     *Plaintiff,* | § | |
| | § | |
| VS. | § | HARRIS  COUNTY, T E X A S |
| | § | |
| DI ANGELO PUBLICATIONS, INC. | § | |
| AND SEQUOIA DI ANGELO | § | |
| aka SEQUOIA SCHMIDT | § | |
|     *Defendants.* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff, Jime Fiume ("**Plaintiff**" or "**Mr. Fiume**"), brings this Original Petition against Defendants, Di Angelo Publications, Inc. ("**Di Angelo Publications**") and Sequoia Di Angelo aka Sequoia Schmidt ("**Ms. Di Angelo**") (collectively referred to herein as the "**Defendants**"), and for causes of action would show the Court as follows:

### DISCOVERY CONTROL PLAN

1.      Discovery Control Plan 2, found in Texas Rule of Civil Procedure 190.3, governs this case.

### JURISDICTION AND VENUE

2.      Venue is proper in Harris County, Texas, because all or a substantial part of the events and omissions giving rise to Mr. Fiume's claims occurred in Harris County, Texas, and both defendants resided in or had their principal office in Harris County, Texas, when Mr. Fiume's claims accrued. Tex. Civ. Prac. & Rem. Code § 15.002(a), Tex. Bus. & Commerce Code § 17.56.

3.      Pursuant to Texas Rule of Civil Procedure 47, Mr. Fiume seeks monetary relief of $200,000 or less and non-monetary relief in the form of a declaratory judgment, and preliminary and permanent injunctions, within the jurisdictional limits of this Court.

4.      This Court has personal jurisdiction over Di Angelo Publications because it is a Texas corporation with its principal place of business in Texas. This Court has personal jurisdiction over Ms. Di Angelo as she is domiciled in Texas.

5.      The damages sought are within the jurisdictional limits of the court.

## PARTIES

6.      Mr. Fiume, the Plaintiff, is an individual who resides in Harris County, Texas.

7.      Defendant Di Angelo Publications, Inc., is a Texas corporation with its principal office at 4265 San Felipe, Suite 1100, Houston, Texas 77027, and may be served through its registered agent Di Angelo Corporation (DBA), 4265 San Felipe, Suite 1100, Houston, Texas 77027, or wherever its registered agent may be found.

8.      Defendant Sequoia Di Angelo aka Sequoia Schmidt, is an individual residing in Harris County and may be served with this Petition together with Citation at 4265 San Felipe, Suite 1100, Houston, Texas 77027 (or at whatever location she may be found).

## CONDITIONS PRECEDENT

9.      All conditions precedent to Mr. Fiume's recovery as pled herein have been satisfied, waived or have occurred.

## SUMMARY

10.     Di Angelo Publications and Ms. Di Angelo fraudulently induced Mr. Fiume to enter a Publications Representation document (the "**Representation Document**") for the publishing and marketing of Mr. Fiume's first novel, eventually titled "Born a Burden: A Story of an American Orphan," which is based on his early life as an orphan who grew up on the streets of New York City. This is a suit for fraud, negligence, breach of contract, violations of the

2

Texas Deceptive Trade Practices Act ("DTPA"), and conversion. This suit further seeks declaratory judgment relief, injunctive relief, an accounting and a constructive trust.

## BACKGROUND

11.     At the time he approached Ms. Di Angelo of Di Angelo Publications, Mr. Fiume had a firm concept in his mind, and was looking for an experienced book publisher and editor who could help him put to paper his story of resilience, survival and success. To induce his engagement, several representations were made to him by Ms. Di Angelo, including that she and Di Angelo Publications had the ability, experience and resources necessary to successfully publish and market his memoirs, and that they would make his novel a best-seller. Di Angelo Publications and Ms. Di Angelo also represented they were competent and capable of publishing and marketing a novel such as his.

12.     On or about January 2, 2017, in total and complete reliance upon the representations about the alleged prowess of Ms. Di Angelo and Di Angelo Publications, Mr. Fiume executed what purports to be a Publications Representation document (the "Representation Document"). The Representation Document identifies Mr. Fiume as a "potential author," and further states that it "is intended to educate [him] about the publication services provided by Di Angelo Publications." Despite the fact that Mr. Fiume clearly discussed publishing his memoirs, in the Representation Document, Di Angelo Publications states that it will publish a "cook book of his works," and clarifies that he will maintain all permission and rights to his "recipes." The Representation Document also provides that it is subject to the "Publisher-Author Privilege," a privilege which is not recognized in the law.

13.     While in retrospect, the assertion of a non-existent privilege and references to recipes and cookbooks should have alerted Mr. Fiume that Ms. Di Angelo and Di Angelo

3

Publications were not qualified to publish and market his memoirs, but Mr. Fiume wholly believed in the Defendants, and was so excited to publish his life story, that he signed on-- completely missing these errors in Defendants' documentation.

14.     As for the substance of the Representation Document, Defendants itemized many deliverables and services that would be performed, including publishing related tasks, such as transcription, contextual editing, editing, layout editorial, print layout, PDF renderings, eBook ISBN Registration, E-Copyright Registration, E-Publication Transformation, Distribution, ISBN Registration, Library of Congress Registration and POD, the services of Defendants' "elite publicity division," and marketing.

15.     As made clear in the Representation Document, Mr. Fiume was a consumer who purchased "a service, along with development of a product" (i.e., the novel) and the fee charged was to cover expenses associated with his novel, including overhead as well as Di Angelo Publications' services in terms of time, professional judgment, experience and expertise, and the time and expense of its staff members. Mr. Fiume understood this to mean his novel would be publicized, promoted, and marketed as appropriate for its audience, which aligned with the representations that Di Angelo Publications and Ms. Di Angelo made to Mr. Fiume at the start of their relationship.

16.     And then, having signed the Representation Agreement, from January 2, 2017, until the present date, Mr. Fiume placed his life story and faith in Ms. Di Angelo and Di Angelo Publications, and satisfied every single request and demand made of him, including that he make a series of large payments to or for the benefit of Di Angelo Publications, as such:

> $6,250.00 on February 6, 2017
> $6,250.00 on February 9, 2017
> $1,500.00 on March 28, 2017
> $3,000.00 on June 20, 2017

4

$7,980.00 on June 22, 2018
$8,000.00 on September 6, 2017
$5,000.00 on October 4, 2017
$7,375.00 on January 15, 2018
$341.74 on March 25, 2019
$1,000.00 on April 26, 2019
$11,000.00 on June 5, 2019

17.     Although Mr. Fiume's work (which again is a memoir, not a cook book) was put into print, in the end, it turns out that Ms. Di Angelo and Di Angelo Publications contributed very little to this effort. Mr. Fiume recently learned that most, if not all of the work, that went into publishing his novel was done by him. Moreover, after "publishing" the novel, Defendants have wholly failed to market the novel, resulting in zero reviews and zero publicity—even in spite of Mr. Fiume's reputation in Texas as a successful businessman and philanthropist. Likely this is because, despite specific representations in the Representation Document, Di Angelo Publications does not actually maintain any "elite publicity division." And, in addition to failing to properly market Mr. Fiume as an author or the novel, Di Angelo Publications and Ms. Di Angelo were not even competent to publish the novel. For example, Di Angelo Publications and Ms. Di Angelo did not properly capitalize on Mr. Fiume's name recognition, connections and reputation in the community. Moreover, the title of the novel and the cover art failed to capture the essence of Mr. Fiume's story, or the life affirming message he shared. As a result, in an effort to correct the errors of his editor and publisher, Mr. Fiume was required to pay more money than originally agreed to revise the layout, change the title of his novel and resubmit his novel.

18.     And now, other than unsold novels and wasted opportunity, Mr. Fiume has nothing to show for his hard work and time.

19.     On August 7, 2019, Mr. Fiume contacted Defendants to terminate whatever contract Defendants believed required him to continue to use their services, and also to seek an

5

accounting of the funds he had most recently paid on June 5, 2019, which was supposed to have been spent on advertising. In response to his email, Ms. Di Angelo first threatened him with a cash buy-out provision, which apparently is contained in yet another document, because there is no such provision in the Representation Document, and then relented, stating, "Give me 2weeks to get the new cover up and do the advertising. If the sales and review have no picked up by the end of August, I will let you walk away from your contract. Deal?" Seven minutes later, Mr. Fiume responded, stating "Ok, I'll agree to that. I feel more confident now that you are willing to prove this to be a success and with the option of me walking away from your agreement if not."

20.    Two weeks came, and went, and sales did not "pick up," and there was no advertising and there were no reviews. Simply, there still is nothing to show for the money paid on June 5, 2019, nevertheless an accounting of how those funds were spent. That said, pursuant to the terms of the agreement reached on August 7, whatever contract Mr. Fiume may have signed or reached with Di Angelo Publications terminated. On September 4, 2019, Mr. Fiume sent another email, confirming that he was "walking away," stating "Well its been more than two weeks since August 7th. ... I have not seen any pick up in sales or reviews... ."

21.    As of this filing, it has been more than five months since Defendants promised increased sales and reviews, and more than four months since Defendants released Mr. Fiume from whatever contract he may have signed. However, and despite all of the foregoing, Defendants continue to hold Mr. Fiume's $10,000.00 that was supposed to have been spent on advertising, and continue to list his novel on the Di Angelo Publications' website, and list the novel for sale on Amazon. There can be no dispute that Mr. Fiume is entitled to a refund of no less than $10,000.00, such being a majority of the monies paid on June 25, 2019 for advertising and marketing that was never provided, as well as return of his intellectual property, work

6

product and any physical copies of the novel, as well as any interest that Di Angelo Publications and Ms. Di Angelo believe they have in the foregoing. And, to add insult to injury, Mr. Fiume later received an invoice in the amount of $1,666.38 for books that Defendants did not sell, and also threatened to bring legal action against him.

22.     It is apparent now that Di Angelo Publications is nothing more than a "vanity" publisher, and took Mr. Fiume to the proverbial cleaners. As a result, Mr. Fiume missed out on potential opportunities and revenues from his novel, as well as opportunities to be considered for prizes and recommended reading lists.

23.     In all, Mr. Fiume wrote a deeply personal novel, and then paid nearly $60,000.00 to Di Angelo Publications and Ms. Di Angelo to merely send his work to a printer and e-publisher, something Mr. Fiume could have handled himself. Together, Di Angelo Publications and Ms. Di Angelo's actions, inactions, errors and omissions caused Mr. Fiume's novel to go unseen, and Mr. Fiume has lost his opportunity to properly launch his inspiring story of resilience, survival and success.

24.     Mr. Fiume thus brings suit against Di Angelo Publications and Ms. Di Angelo.

## CAUSES OF ACTION

### Fraudulent Inducement

25.     Mr. Fiume incorporates as if fully set forth herein the foregoing paragraphs.

26.     Di Angelo Publications and Ms. Di Angelo made material representations to Mr. Fiume regarding the publication, marketing, and distribution of Mr. Fiume's novel.

27.     Di Angelo Publications and Ms. Di Angelo's representations were false. Moreover, at the time the representations were made, Di Angelo Publications and Ms. Di Angelo

knew the representations were false or otherwise made the representations recklessly, as positive assertions, and without knowledge of their truth.

28.    Di Angelo Publications and Ms. Di Angelo made the representations with the intent that Mr. Fiume act on them, which he did by signing the Representation Document, turning and paying money each time he was requested to do so.

29.    Moreover, once Defendants voluntarily conveyed this, and other, information, which was false or misleading and that would influence Mr. Fiume, then Defendants were under a duty to disclose the whole truth regarding the voluntarily conveyed information.

30.    Di Angelo Publications and Ms. Di Angelo's representations caused injury to Mr. Fiume, for which he brings suit, seeking recovery of all recoverable damages. In the alternative, Mr. Fiume has no adequate remedy at law and seeks the equitable remedy of rescission or cancellation of any and all agreements marred by fraud, as well as the return to Mr. Fiume of the original file relating to his novel, including but not limited to all documents, in whatever format, whether tangible or electronic, and all intellectual property associated with Mr. Fiume's novel, including the manuscript, and all print and digital copies of Mr. Fiume's novel, as well as recovery of any compensatory or special damages or expenses incurred as a result of thereof, including, without limitation, recovery of attorney's fees and costs.

31.    Mr. Fiume is further entitled to recovery of his attorney fees, expert witness fees, litigation costs and costs of court, as well as punitive or exemplary damages, regardless of the remedy.

20190808.20200106/3451150.1

**Negligent Misrepresentation**

32.     Mr. Fiume incorporates as if fully set forth herein the foregoing paragraphs.

33.     Di Angelo Publications and Ms. Di Angelo made false representations to Mr. Fiume in the course of a transaction in which Di Angelo Publications and Di Angelo had an interest, and in doing so, did not exercise reasonable care or competence in obtaining or communicating the information to Mr. Fiume. Mr. Fiume justifiably relied on the representations, which caused injury to Mr. Fiume, for which he brings suit, including seeking recovery of all damages that foreseeably and proximately caused damage. Each violation of the duties owed to Mr. Fiume constitutes an independent act of negligence, for which he is entitled to recovery. In addition to its actual damages, Mr. Fiume seeks to recover all expenses incurred in the prosecution of this matter, including expert fees, all costs of court and pre and post-judgment interest at the highest rate allowed by law.

34.     In addition, Defendants' negligence rises to the level of gross negligence for which they each are liable to Mr. Fiume for exemplary damages.

35.     In addition to actual, exemplary and resulting damages, Mr. Fiume seeks to recover all expenses incurred in the prosecution of this matter, including expert fees, all costs of court and pre and post-judgment interest at the highest rate allowed by law.

**Constructive Trust and Unjust Enrichment**

36.     Mr. Fiume incorporates as if fully set forth herein the foregoing paragraphs.

37.     Further, Defendants have been unjustly enriched in that they have wrongfully secured a benefit or passively received one which would be unconscionable for that party to retain. Mr. Fiume is entitled to entry of a constructive trust on all royalties or other monies paid

9

to or otherwise received by Defendants relating to any sale or license of Mr. Fiume's novel, as necessary and appropriate to prevent unjust enrichment.

**Breach of Contract**

38.    Mr. Fiume incorporates as if fully set forth herein the foregoing paragraphs.

39.    In the alternative, Mr. Fiume would show that there *was* or *is* a valid, enforceable contract between Di Angelo Publications, Ms. Di Angelo, and Mr. Fiume. Although Mr. Fiume fully performed his obligations, including making payment as demanded, Di Angelo Publications and Ms. Di Angelo wholly failed, including, but not limited to, not competently preparing Mr. Fiume's novel for print and publication, not marketing Mr. Fiume's novel, and not providing an accounting to Mr. Fiume of the funds requested and paid.

40.    Di Angelo Publications and Ms. Di Angelo's breaches caused injury to Mr. Fiume, including (without limitation) attorneys' fees, for which he brings suit. Mr. Fiume seeks the following damages, including without limitation, lost profits and opportunities, as well as all such recoverable actual damages, special damages, and equitable relief, to the extent it must be pleaded in the alternative, including disgorgement and/or constructive trust, for such breaches together with any further breaches as are later found to exist, as well as the return to Mr. Fiume of the original file relating to his novel, including but not limited to all documents, in whatever format, whether tangible or electronic, and all intellectual property associated with Mr. Fiume's novel, including the manuscript, and all print and digital copies of Mr. Fiume's novel, as well as recovery of any compensatory or special damages or expenses incurred as a result of thereof, including, without limitation, recovery of attorney's fees and costs. In addition, Mr. Fiume seeks to recover all expenses incurred in the prosecution of this matter, including expert fees, all costs of court and pre and post-judgment interest at the highest rate allowed by law.

10

**Violations of the Texas Deceptive Trade Practices Act**

41.    Mr. Fiume incorporates as if fully set forth herein the foregoing paragraphs.

42.    At all times relevant to this matter, Mr. Fiume was a "consumer" as that term is defined in the DTPA.

43.    Prior to, and during, the course of Mr. Fiume and Defendants' relationship, Defendants repeatedly violated the DTPA by engaging in at least the following conduct:

   a.    causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

   b.    representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;

   c.    representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

   d.    representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and

   e.    the failure to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

44.    Defendants' conduct was committed knowingly and/or intentionally. Further, such conduct was unconscionable.

45.    Defendants' conduct was relied on by Mr. Fiume to his detriment. As such, Mr. Fiume is entitled to all actual economic and special damages including without limitation up to treble damages, because Defendants' actions were taken knowingly and/or intentionally. Defendants' intentions may be inferred by the objective manifestations of such intentional acts

11

and/or because each acted with flagrant disregard of prudent and fair business practices to the extent that Defendants should be treated as having acted intentionally. Mr. Fiume also is entitled to recovery of his attorneys' fees under the DTPA, for which he seeks recovery herein. In addition, Mr. Fiume seeks to recover all expenses incurred in the prosecution of this matter, including expert fees, all costs of court and pre and post-judgment interest at the highest rate allowed by law.

46.     Prior to filing this lawsuit, Mr. Fiume provided Defendants with at least 60-days written notice of his claims as required by the Texas Business and Commerce Code.

**Conversion**

47.     Mr. Fiume incorporates as if fully set forth herein the foregoing paragraphs.

48.     Mr. Fiume owns, possesses, and has the right to immediate possession of his personal property, including the work product, research, drafts, and digital and hard copies of his novel, as well as his intellectual property which comprises his novel including the rights to the publication, distribution, and marketing of his manuscript, ideas and novel.

49.     Despite having no current claim of right of title or possession to this property, Di Angelo Publications and Ms. Di Angelo continue to wrongfully exercise dominion and control over Mr. Fiume's property, including continuing to list his novel for sale on Amazon.com and on the Di Angelo Publications website.

50.     Mr. Fiume brings suit for the damages caused by Defendants' wrongful exercise of control and dominion over Mr. Fiume's property, including without limitation, the value of the property converted, and Mr. Fiume sues for all such recoverable damages for such conversion, including actual damages, the return of the property, loss of value and use, loss of profits, together with any further damages as are later found to exist. In addition, Mr. Fiume

12

seeks to recover all expenses incurred in the prosecution of this matter, including expert fees, all costs of court and pre and post-judgment interest at the highest rate allowed by law.

**Request for Declaratory Relief**

51.     Mr. Fiume incorporates as if fully set forth herein the foregoing paragraphs.

52.     An actual justiciable controversy exists between the parties, and Mr. Fiume seeks relief under the Texas Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code § 37.001, et seq., requesting that the Court declare the following:

     a.    Di Angelo Publications and Ms. Di Angelo have no intellectual property, publication, distribution, or marketing rights, title or interest in or to Mr. Fiume's manuscript, ideas and novel;

     b.    Mr. Fiume is the sole owner of all intellectual property, publication, distribution, and marketing rights to his manuscript, ideas and novel;

     c.    Di Angelo Publications and Ms. Di Angelo are not authorized to publish, distribute, advertise or market Mr. Fiume's novel; and

     d.    Mr. Fiume is released from any and all obligations and duties under any agreement with Defendants, including, but not limited to, any payment, cost or expense, nondisclosure, publicity, or noncompetition obligations.

53.     In addition to the declaratory relief sought, Mr. Fiume further requests that, pursuant to Section 37.009 of the Texas Civil Practice and Remedies Code, this Court award him his costs and reasonable and necessary attorneys' fees, as are equitable and just, for pursuing his claims for declaratory relief.

**Accounting**

54.     Mr. Fiume incorporates as if fully set forth herein the foregoing paragraphs.

55.     In the alternative, Mr. Fiume seeks an accounting in equity, the granting of which is within the discretion of the trial court. To be entitled to an accounting, a plaintiff generally must have a contractual or fiduciary relationship with the party from whom the plaintiff seeks the accounting. There can be no dispute that such a relationship exists here.

56.    Mr. Fiume is entitled to an accounting of all royalties or other monies paid to or otherwise received by Defendants relating to any sale or license of Mr. Fiume's novel,  as necessary and appropriate to prevent unjust enrichment. Mr. Fiume is further entitled to an accounting of the funds paid or advanced by him to Defendants in connection with the alleged services to be provided by Defendants, as well as of the alleged third-party and contractor costs paid by Defendants which were alleged to have been associated with writing, editing, publishing and marketing Mr. Fiume's novel.

**Application for Injunctive Relief**

57.    Mr. Fiume incorporates as if fully set forth herein the foregoing paragraphs.

58.    Generally, there are two types of injunctions: prohibitive and mandatory. A prohibitive injunction forbids conduct, whereas a mandatory injunction requires it. A mandatory injunction should be granted when necessary to prevent irreparable injury or extreme hardship where the circumstances justify it.

59.    Mr. Fiume is entitled to the relief demanded and all or part of the relief requires the restraint of some act which is prejudicial to him. More specifically, Mr. Fiume would show that Defendants, individually and in combination, have performed and are about to perform, or is procuring or is allowing the performance of, an act relating to the subject of this litigation, in violation of his rights, and these acts would tend to render judgment in this litigation ineffectual. Moreover, Mr. Fiume is entitled to an injunction because irreparable injury to personal property is threatened, irrespective of any remedy at law.

60.    Mr. Fiume would show that the Defendants are unlikely to comply with any declaratory judgment of this Court. Section 37.011 of the Texas Civil Practices and Remedies Code allows for "[f]urther relief based on a declaratory judgment" upon a showing that the relief

is "necessary or proper." Tex. Civ. Prac. & Rem. Code Ann. § 37.011. A permanent injunction may be obtained when the evidence establishes that a defendant will not comply with a declaratory judgment and the applicant proves the occurrence of a wrongful act giving rise to imminent and irreparable harm for which there is no adequate remedy at law.

61.    As shown above, Defendants' actions have endangered and interfered with Mr. Fiume's opportunities to properly market his novel and Defendants actions in continuing to market and sell Mr. Fiume's novel have resulted in irreparable injury and extreme hardship to Mr. Fiume, and he will continue to suffer said injury and hardship unless Defendants are permanently enjoined from publishing, distributing, advertising or marketing Mr. Fiume's novel. Therefore, unless these Defendants are enjoined, Mr. Fiume will continue to suffer irreparable harm and an extreme hardship.

62.    As such, Mr. Fiume requests that this Court enter an injunction enjoining Defendants, and their agents, servants, and employees, from publishing, distributing, advertising or marketing Mr. Fiume's novel.

63.    Plaintiff further seeks a mandatory injunction compelling Defendants, and their agents, servants, and employees, to turn over to Mr. Fiume the original file relating to his novel, including but not limited to all documents, in whatever format, whether tangible or electronic, all intellectual property associated with Mr. Fiume's novel, including the manuscript, and all print and digital copies of Mr. Fiume's novel.

64.    Mr. Fiume also seeks an order of this Court compelling the deposition of Defendants in the offices of Hirsch & Westheimer, PC, 1415 Louisiana, 36th Floor, Houston, Texas 77002 on a date sufficiently in advance of the hearing on any injunction.

65.     Although Mr. Fiume seeks an injunction, the provision of financial damages for Defendants' breaches and violations as set forth herein is not inconsistent with injunctive relief, because even where money damages are available to compensate for some harm, other less tangible injuries cannot be so easily valued or compensated, so that the availability of money damages that do not fully compensate Mr. Fiume do not preclude a preliminary injunction.

**Exemplary or Punitive Damages**

66.     Mr. Fiume incorporates as if fully set forth herein the foregoing paragraphs.

67.     Because of the nature of the claims made herein, Mr. Fiume is entitled to punitive and exemplary damages. Such actions were taken knowingly, recklessly, intentionally, willfully and/or with gross negligence. Mr. Fiume prays for punitive or exemplary damages in an amount assessed by the finder of fact to adequately punish the Defendants, jointly and severally, for these actions. Accordingly, Mr. Fiume seeks, and is statutorily entitled to recover, exemplary damages against Defendants pursuant to Chapter 41, et seq. of the Texas Civil Practice & Remedies Code.

**Offset or Set Off**

68.     Mr. Fiume incorporates as if fully set forth herein the foregoing paragraphs.

69.     Mr. Fiume denies that he owes Defendants any money, first because he received nothing in exchange for the monies he already gave them, but also because he was "released" from any further obligations under the Representation Document. In an abundance of caution, however, Mr. Fiume pleads in the alternative that he is entitled to a setoff, offset and/or credit against the damages he has incurred in the amount of any monies allegedly due and owing to either or both of the Defendants.

20190808.20200106/3451150.1

**Attorney's Fees**

70.     Mr. Fiume incorporates as if fully set forth herein the foregoing paragraphs.

71.     By reason of the claims alleged herein Mr. Fiume was required to engage the undersigned firm of attorneys and has agreed to pay such firm a reasonable attorneys' fee. Mr. Fiume prays that an additional judgment be had against Defendants, jointly and severally, for all such reasonable and necessary attorney's fees as are incurred herein through the trial of this case and any subsequent appeal, pursuant to Chapter 38 of the Texas Civil Practices and Remedies Code.

72.     In addition to the declaratory relief requested herein, Mr. Fiume is entitled to an award of reasonable and necessary attorneys' fees incurred in obtaining the declaratory relief sought above pursuant to Section 37.001, *et seq.* of the Texas Civil Practices & Remedies Code. As such, Mr. Fiume also requests a declaration that they are entitled to recover their costs and reasonable and necessary attorneys' fees incurred in obtaining these declarations, at the trial level and at the appellate level, if such is necessary, as provided by Section 37.009 of the Texas Civil Practice & Remedies Code.

## REQUEST FOR DISCLOSURES

73.     Plaintiffs request that Defendants provide those disclosures set forth in Section 194.2 of the Texas Rules of Civil Procedure within fifty (50) days of service of this pleading.

## PRAYER

74.     Upon trial of this matter, Plaintiff, Jim Fiume prays for judgment against Defendants, Di Angelo Publications, Inc. and Sequoia Di Angelo aka Sequoia Schmidt, jointly and severally, as follows:

- For all recoverable actual, special and/or equitable damages or remedies as are proven herein or at the time of trial;

17

- For rescission or cancellation of any and all agreements marred by fraud and any compensatory or special damages or expenses incurred as a result including, without limitation recovery of attorney's fees and costs;
- For setoff, offset and/or credit against the damages he has incurred in the amount of any monies allegedly due and owing to Defendants;
- For the return of the property, and the loss of value and use, and loss of profits;
- For an accounting as pleaded herein;
- For a constructive trust on all royalties or other monies paid to or otherwise received by Defendants relating to any sale or license of Mr. Fiume's novel, as necessary and appropriate to prevent unjust enrichment;
- For disgorgement as pleaded herein;
- For a declaration that:
  - a. Di Angelo Publications and Ms. Di Angelo have no intellectual property, publication, distribution, or marketing rights, title or interest in or to Mr. Fiume's manuscript, ideas and novel;
  - b. Mr. Fiume is the sole owner of all intellectual property, publication, distribution, and marketing rights to his manuscript, ideas and novel;
  - c. Di Angelo Publications and Ms. Di Angelo are not authorized to publish, distribute, advertise or market Mr. Fiume's novel; and
  - d. Mr. Fiume is released from any and all obligations and duties under any agreement with Defendants, including, but not limited to, any payment, cost or expense, nondisclosure, publicity, or noncompetition obligations.
- For a preliminary and permanent injunction enjoining Defendants, and their agents, servants, and employees, from publishing, distributing, advertising or marketing Mr. Fiume's novel, and a mandatory injunction compelling Defendants, and their agents, servants, and employees, to turn over to Mr. Fiume the original file relating to his novel, including but not limited to all documents, in whatever format, whether tangible or electronic, all intellectual property associated with Mr. Fiume's novel, including the manuscript, and all print and digital copies of Mr. Fiume's novel;
- For exemplary or punitive damages;
- For pre and post judgment interest;
- For reasonable and necessary attorneys' fees; and
- For such other and further relief to which this Court deems Mr. Fiume to be justly entitled.

20190808.20200106/3451150.1

Respectfully submitted,

HIRSCH & WESTHEIMER, P.C.

By: /s/ Melissa N. Sternfels
    Eric Lipper
    State Bar No. 12399000
    elipper@hirschwest.com
    Melissa Nicholson Sternfels
    State Bar No. 24037181
    msternfels@hirschwest.com
    1415 Louisiana, 36th Floor
    Houston, Texas 77002
    Telephone:  713.220.9181
    Facsimile:  713.223.9319

**ATTORNEYS FOR PLAINTIFF**
**JIME FIUME**

20190808.20200106/3451150.1