**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JIME FIUME, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-cv-00540 |
| | § | **JURY TRIAL DEMANDED** |
| DI ANGELO PUBLICATIONS, INC. and | § | |
| SEQUOIA DI ANGELO aka SEQUOIA | § | |
| SCHMIDT, | § | |
| Defendants. | § | |

## DEFENDANT DI ANGELO PUBLICATIONS, INC. AND DEFENDANT SEQUOIA SCHMIDT'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS IN RESPONSE TO PLAINTIFF'S ORIGINAL PETITION

Defendants, Di Angelo Publications, Inc. ("Di Angelo Publications") and Sequoia Schmidt ("Schmidt"), (collectively "Defendants"), by and through their undersigned counsel, submit the following answer, affirmative defenses, and counterclaims to the allegations set forth in the Complaint by Jime Fiume ("Fiume" or "Plaintiff").

## DISCOVERY CONTROL PLAN

1.     Defendants deny the allegations in Paragraph 1 of the Complaint.  The procedures and limitations set forth in the Texas Discovery Control Plan 2 are not applicable in federal court, whose procedures are set forth in the Federal Rules of Civil Procedure and the local rules of this Court, a copy of which Defendants have provided to Plaintiff.

## JURISDICTION AND VENUE

2.     Defendants admit that venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1391(c).  Defendants deny the allegations in Paragraph 2 of the Complaint, except that

1

Defendants admit that a substantial part of the alleged events giving rise to this lawsuit occurred in Harris County, Texas and that "both defendants resided in or had their principal office in Harris County, Texas, when Mr. Fiume's claims [allegedly] accrued."

3.     The Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a) (copyrights).  This Court has supplemental jurisdiction over claims that do not present federal questions under 28 U.S.C. § 1367.  This litigation arises under federal law, namely 17 U.S.C. § 101 et seq., and particularly § 102(a) (Copyright Act). Defendants deny the allegations in Paragraph 3 of the Complaint, except that Defendants admit that Plaintiff claims monetary damages, a declaratory judgment, and injunctions.

4.     Defendants admit that this Court has personal jurisdiction over all of the parties.

5.     Defendants deny the allegations in Paragraph 5 of the Complaint, except that Defendants admit that Plaintiff claims damages, but the amount is in dispute and is not relevant as a basis of jurisdiction for this Court.

PARTIES

6.     Defendants admit the allegations of Paragraph 6.

7.     Defendants admit the allegations of Paragraph 7.

8.     Defendants admit the allegations of Paragraph 8.

CONDITIONS PRECEDENT

9.     Defendants deny the allegations of Paragraph 9.

SUMMARY

10.     Paragraph 10 of the Complaint is a narrative and/or sets forth legal conclusions for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations in Paragraph 10 of the Complaint, with the following exceptions:  Defendants admit

that Defendant Di Angelo Publications, Inc., among other things, published and marketed a book for Plaintiff "eventually titled, 'Born a Burden:  A Story of an American Orphan,'" which is allegedly based in part on his alleged early life as an alleged orphan who allegedly grew up on the streets of New York City.  Defendants also admit that Fiume entered into an agreement with Di Angelo Publications for among other things the publishing and marketing of the book.

## BACKGROUND

11.     Paragraph 11 of the Complaint is at least in part a narrative and/or sets forth legal conclusions for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 11, except that Defendants admit that Defendant Schmidt represented to Fiume on behalf of Defendant Di Angelo Publications that Defendant Di Angelo Publications was competent and capable of publishing and marketing books such as memoirs and Defendants admit that Defendant Di Angelo Publications was at the indicated time and is now competent and capable of publishing and marketing books such as memoirs.

12.     Paragraph 12 of the Complaint is at least in part a narrative and/or sets forth legal conclusions for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 12 to the extent that they purport to re-characterize or partially state or restate the actual wording and context of the subject agreement, which agreement is best represented and understood in its entirety.  Defendants deny any remaining allegations of Paragraph 12 except that Defendants admit that Fiume executed an agreement with Defendant Di Angelo Publications for preparation and publishing of his memoirs.

13.     Paragraph 13 of the Complaint is at least in part a narrative and/or sets forth legal conclusions for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 13, except that Defendants admit that Fiume

executed an agreement with Defendant Di Angelo Publications for preparation and publishing of his memoirs. Defendants lack sufficient information or knowledge to form a belief as to the truth of Fiume's belief or excitement and therefore denies same.

14. Defendants deny the allegations of Paragraph 14 to the extent they purport to include the entire content of the agreement between Di Angelo Publications and Fiume respecting the services to be provided by Di Angelo Publications or otherwise purport to characterize or partially state or restate the actual wording and context of the subject agreement, which agreement is best represented and understood in its entirety. Defendants admit that the listing in Paragraph 14 sets forth some of the services that Di Angelo Publications provides. Defendants deny the remaining allegations of Paragraph 14.

15. Paragraph 15 of the Complaint is at least in part a narrative and/or sets forth legal conclusions for which no answer is required. To the extent that an answer is required, Defendants deny the allegations of Paragraph 15 to the extent they purport to include the entire content of the agreement between Di Angelo Publications and Fiume respecting the expenses to be paid by Fiume or purport to characterize or partially state or restate the actual wording and context of the subject agreement, which agreement is best represented and understood in its entirety. Defendants admit that the agreement between Fiume and Di Angelo Publications provided for Fiume to pay for certain expenses. Defendants lack sufficient information or knowledge to form a belief as to the truth of Fiume's understanding and therefore denies same. Defendants deny the remaining allegations of Paragraph 15.

16. Defendants deny the allegations of Paragraph 16.

17. Defendants deny the allegations of Paragraph 17.

18. Defendants deny the allegations of Paragraph 18.

19.     Defendants admit that Fiume and Defendant Schmidt acting on behalf of Defendant Di Angelo Publications had a communication regarding a new cover, advertising, and sales, but Defendants deny the allegations of Paragraph 19 to the extent they take such communication out of context and thereby mislead and misrepresent the exchange and understanding between the parties.  Defendants deny the remaining allegations of Paragraph 19.

20.     Paragraph 20 of the Complaint is at least in part a narrative and/or sets forth legal conclusions for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 20 as taking an alleged communication out of context so as to mislead and misrepresent the understanding between the parties, and the actions or inactions by the parties.   Defendants deny the allegations of Paragraph 20.

21.     Paragraph 21 of the Complaint is at least in part a narrative and/or sets forth legal conclusions for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 21, except that Defendants admit that Fiume's memoir is listed for sale on Amazon and Defendants admit that Defendant Di Angelo Publications invoiced Fiume for books.

22.     Defendants deny the allegations of Paragraph 22.

23.     Defendants deny the allegations of Paragraph 23.

24.     The allegations in Paragraph 24 set forth a legal conclusion for which no answer is required.

CAUSES OF ACTION

Fraudulent Inducement

25.     Defendants incorporate by reference the answers to Paragraphs 1-24 above, as if fully repeated here.

26.     Defendants deny the allegations of Paragraph 26.

27.     Defendants deny the allegations of Paragraph 27.

28.     Defendants deny the allegations of Paragraph 28.

29.     Defendants deny the allegations of Paragraph 29.

30.     The allegations in Paragraph 30 set forth legal conclusions for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 30.

31.     The allegations in Paragraph 31 set forth legal conclusions for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 31.

Negligent Misrepresentation

32.     Defendants incorporate by reference the answers to Paragraphs 1-31 above, as if fully repeated here.

33.     The allegations in Paragraph 33 set forth legal conclusions for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 33.

34.     The allegations in Paragraph 34 set forth legal conclusions for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 34.

35.     The allegations in Paragraph 35 set forth legal conclusions or a listing of Plaintiff's demands for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 35.

Constructive Trust and Unjust Enrichment

36.     Defendants incorporate by reference the answers to Paragraphs 1-35 above, as if fully repeated here.

37.     The allegations in Paragraph 37 set forth legal conclusions for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 37.

Breach of Contract

38.     Defendants incorporate by reference the answers to Paragraphs 1-37 above, as if fully repeated here.

39.     The allegations in Paragraph 39 set forth legal conclusions for which no answer is required.  To the extent that an answer is required, and with respect to any factual allegations in Paragraph 39, Defendants deny the allegations of Paragraph 39, except that Defendants admit that there was or is is a valid, enforceable contract between Plaintiff and Defendant Di Angelo Publications.

40.     The allegations in Paragraph 40 set forth legal conclusions and a listing of Plaintiff's demands for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 40.

Violations of the Texas Deceptive Trade Practices Act

41.     Defendants incorporate by reference the answers to Paragraphs 1-40 above, as if fully repeated here.

42.     Defendants deny the allegation of Paragraph 42.

43.     Defendants deny the allegations of Paragraph 43.

44.     Defendants deny the allegations of Paragraph 44.

45.     Defendants deny the allegations of Paragraph 45.

46. Defendants deny the allegations of Paragraph 46.

Conversion

47. Defendants incorporate by reference the answers to Paragraphs 1-46 above, as if fully repeated here.

48. The allegations in Paragraph 48 set forth legal conclusions for which no answer is required. To the extent that an answer is required, Defendants deny the allegations of Paragraph 48.

49. The allegations in Paragraph 49 set forth legal conclusions for which no answer is required. To the extent that an answer is required, Defendants deny the allegations of Paragraph 49.

50. The allegations in Paragraph 50 set forth legal conclusions for which no answer is required. To the extent that an answer is required, Defendants deny the allegations of Paragraph 50.

Request for Declaratory Relief

51. Defendants incorporate by reference the answers to Paragraphs 1-50 above, as if fully repeated here.

52. The allegations in Paragraph 52 set forth legal conclusions for which no answer is required. To the extent that an answer is required, Defendants deny the allegations of Paragraph 52.

53. The allegations in Paragraph 53 set forth legal conclusions or state demands by Plaintiff for which no answer is required. To the extent that an answer is required, Defendants deny the allegations of Paragraph 53.

Accounting

54.     Defendants incorporate by reference the answers to Paragraphs 1-53 above, as if fully repeated here.

55.     The allegations in Paragraph 55 set forth legal conclusions for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 55.

56.     The allegations in Paragraph 56 set forth legal conclusions for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 56.

Application for Injunctive Relief

57.     Defendants incorporate by reference the answers to Paragraphs 1-56 above, as if fully repeated here.

58.     The allegations in Paragraph 58 set forth legal conclusions for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 58.

59.     Defendants deny the allegations of Paragraph 59.

60.     The allegations in Paragraph 60 set forth legal conclusions for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 60.

61.     Defendants deny the allegations of Paragraph 61.

62.     The allegation in Paragraph 62 is a claim for alleged relief for which no answer is required.  To the extent that an answer is required, Defendants deny the allegation of Paragraph 62.

63.     The allegation in Paragraph 63 is a claim for alleged relief for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 63.

64.     The allegation in Paragraph 64 seeks an order from this Court for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 64 and deny that Plaintiff has established reasonable basis for the order and thus Defendants oppose this Court's grant of the requested order.

65.     The allegations in Paragraph 65 set forth legal conclusions and demands by Plaintiff for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 65.

Exemplary or Punitive Damages

66.     Defendants incorporate by reference the answers to Paragraphs 1-65 above, as if fully repeated here.

67.     The allegations in Paragraph 67 set forth legal conclusions and claims for alleged relief for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 67.

Offset or Set Off

68.     Defendants incorporate by reference the answers to Paragraphs 1-67 above, as if fully repeated here.

69.     Defendants deny the allegations of Paragraph 69.

Attorneys Fees

70.     Defendants incorporate by reference the answers to Paragraphs 1-69 above, as if fully repeated here.

71.    Defendants deny the allegations of Paragraph 71.

72.    Defendants deny the allegations of Paragraph 72.

REQUESTS FOR DISCLOSURES

73.    The allegations of Paragraph 73 refer to disclosures pursuant to the Texas Rules of Civil Procedure, for which no answer is required and which Rules should be replaced in this Court with the Federal Rules of Civil Procedure.  To the extent an answer is required, Defendants deny the allegations of Paragraph 73.

PRAYER

74.    The allegations of Paragraph 74 refer to legal conclusions and seek a judgment from this Court for which no answer is required.  To the extent that an answer is required, Defendants deny the allegations of Paragraph 74 and deny that Plaintiff is entitled to the judgment it seeks.

**DEFENDANTS' AFFIRMATIVE DEFENSES**

75.    Defendants, for their affirmative defenses, state as follows:

**Plaintiff's Cause of Action of Fraudulent Inducement Should be Dismissed
Under Fed. R. Civ. P. 9(b) and/or 12(b)(6)**

***Plaintiff has failed to plead and cannot plead
circumstances constituting fraud with particularity
or the necessary elements of fraudulent inducement.***

76.    Plaintiff has not pled circumstances alleging fraud with particularity.

77.    Plaintiff has not pled or shown that either Defendant made a material representation, known by that Defendant to be false when made or made recklessly without any knowledge of its truth and as a positive assertion.

78.     Plaintiff has not pled or shown that Plaintiff acted in reliance on any such alleged material misrepresentation, nor has Plaintiff pled or shown how any such alleged misrepresentation was material.

79.     Plaintiff has not pled or shown it has suffered any injury.

81.     Plaintiff has not pled or shown it has suffered any injury that Plaintiff did not itself cause by Plaintiff's own independent actions, such as, for non-limiting example, in Plaintiff's causing delays by making changes in the book contents, title, cover and even author name after completion of the book and after Plaintiff's approval of the book, thereby thwarting and delaying book sales and increasing costs of preparation, publishing, and marketing of the book.

82.     Plaintiff has not pled or shown any misrepresentation by either Defendant that a reasonable person would attach importance to and would be induced to act on in determining his choice of actions in the transaction in question. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.,* 341 S.W.3d 323, 337 (Tex. 2011).

83.     Plaintiff has not specifically or clearly identified any material misrepresentation on which Plaintiff's claim is based.  However, as best as Defendants can understand, Plaintiff's complaint is essentially that the book prepared for him by Defendant Di Angelo Publications did not become a "best seller" and/or copies of the book did not sell fast enough to suit Plaintiff.

84.     Neither Defendant ever represented to Plaintiff that the book would become a "best seller."

85.     No reasonable person would expect any publisher to guarantee a book would be a "best seller" or even be able to predict whether a book would be a "best seller."

**Plaintiff's Cause of Action of Negligent Misrepresentation Should be Dismissed Under Fed. R. Civ. 12(b)(6)**

***Plaintiff has failed to plead and cannot plead***
***circumstances constituting the necessary elements of negligent misrepresentation.***

86.     Plaintiff has not pled or shown that either Defendant made a representation "in the course of Di Angelo Publications' business," or in the pursuit of a transaction where either Defendant had a personal financial interest, and where the representation supplied "false information" to "guide" others in their own business.

87.     Plaintiff has not pled or shown that either Defendant failed to "exercise reasonable care" in gathering or disseminating any information to Plaintiff.

88.     Plaintiff has not pled or shown that any alleged "false representation" referred to a past or existing fact, rather than a personal opinion or a prediction about the future.

89.     Plaintiff has not pled or shown that the Defendant and alleged speaker of the alleged "false representation" had no reasonable grounds for believing the statement to be true.

90.     Plaintiff has not pled or shown that the alleged "false representation" was made with the intent of convincing the plaintiff to do "something."  Plaintiff has not pled or shown even what that "something" specifically was.

91.     Plaintiff has not pled or shown that he relied on any such "false representation," nor has Plaintiff shown that any such reliance would be "justifiable."

92.     Plaintiff has not pled or shown that such alleged "false representation" proximately caused Plaintiff any injury.

93.     Plaintiff has not clearly or specifically identified the specific alleged "false representation" to which he refers.

94.     Any such alleged "false representation" by either Defendant was puffery if the representation was "false" at all.

95.     Plaintiff has not pled or shown the grounds or basis on which Plaintiff claims that the alleged negligence rose to the alleged level of "gross negligence" that Plaintiff claims.

### Plaintiff's Cause of Action of Constructive Trust and Unjust Enrichment Should be Dismissed Under Fed. R. Civ. 12(b)(6)

#### *Plaintiff has failed to plead and cannot plead circumstances constituting the necessary elements of constructive trust and unjust enrichment.*

96.     The proponent of a constructive trust must strictly prove the elements necessary for the imposition of the trust. *Troxel v. Bishop,* 201 S.W.3d 290, 297 (Tex. App.-Dallas 2006, no pet.); *Hubbard v. Shankle,* 138 S.W.3d 474, 485 (Tex. App. –Fort Worth 2004, pet. denied).

97.     Plaintiff's claim is comprised of one specific paragraph, vaguely referring to an unnamed and unexplained  allegedly "wrongfully secured" "benefit" "or passively received one." Plaintiff fails to specifically identify what exactly Plaintiff alleges merits a constructive trust or which royalties Plaintiff wants secured—the royalties to which Defendant Di Angelo Publications is contractually entitled, or the royalties to which Plaintiff is contractually entitled? Or is Plaintiff alleging that it is entitled to all of the royalties for the book sales and that Defendant Di Angelo Publications is entitled to no compensation for its preparation, publishing and marketing of the book?

98.     Under Texas law, to obtain a constructive trust, the proponent must provide (1) the breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *Troxel v. Bishop,* 201 S.W.3d 290, 297 (Tex. App.-Dallas 2006, no pet.); *Hubbard v. Shankle,* 138 S.W.3d 474, 485 (Tex. App. –Fort Worth 2004, pet. denied).

99.     There was and is no special trust between Plaintiff and either of the Defendants.

100.    There was and is no fiduciary relationship, formal or informal, between Plaintiff and either of the Defendants.

101.    Neither Defendant committed fraud and Plaintiff has failed to specifically plead fraud by either Defendant as required by Fed. R. Civ. P. 9 (b), stating with particularity the circumstances constituting the alleged fraud.

102.    Neither Defendant was or is a wrongdoer with respect to Plaintiff.

103.    Neither Defendant was or is a wrongdoer with respect to preparing, publishing or marketing the book in suit.

104.    Defendant Di Angelo Publications has lawful copyrights in the book it created in suit.

105.    Plaintiff has failed to show any unjust enrichment by either Defendant.

106.    Plaintiff is not entitled to a constructive trust of any royalties from book sales.

**Plaintiff's Cause of Action for Breach of Contract
Should be Dismissed Under Fed. R. Civ. 12(b)(6)**

***Plaintiff has failed to plead and cannot plead
circumstances constituting the necessary elements
of breach of contract.***

107.    Plaintiff contracted with Defendant Di Angelo Publications to write his memoir.

108.    Defendant Di Angelo Publications obtained a suitable ghostwriter to write Plaintiff's memoir.  Defendant Di Angelo Publications arranged for that ghostwriter to meet with Plaintiff to obtain information for including in the memoir.

109.    When the ghostwriter had completed the memoir, or so the ghostwriter thought, Plaintiff advised he wanted the memoir to be longer.

110.    Defendant Di Angelo Publications had one of its editors meet with Plaintiff multiple times to add material to the memoir.  When that editor's work was complete and the

manuscript was believed by Defendant Di Angelo Publications to be finished—completely edited and formatted ready to print--Plaintiff advised Di Angelo Publications and Defendant Schmidt that Plaintiff had omitted a portion of his life story from the book—a portion about his abandoning his family in New York--and he inquired whether he should have the manuscript rewritten to include it. Upon learning the content of the omitted material, Defendant Schmidt recommended that the material be included because the material seemed to be an important part of Plaintiff's life story.

111.    Plaintiff then asked Defendant Di Angelo Publications to have the editor include the additional material, which the editor did. Defendant Di Angelo Publications then readied the manuscript again for printing, prepared a proposed cover and a proposed title and submitted all to Plaintiff for approval before printing.

112.    Plaintiff approved the final manuscript, proposed title, "Street Smart, an Orphan's Story," and cover and indicated the author name should be "Jim River" instead of Jime Fiume to provide him some anonymity. Defendant Di Angelo Publications changed the author name on the book to "Jim River," published the book in April 2019 and began efforts to market the book.

113.    As part of this marketing effort, Defendant Di Angelo Publications arranged for a book signing by Plaintiff at River Oaks Bookstore in Houston, Texas.

114.    Soon thereafter, Plaintiff asked Defendant Di Angelo Publications to change the author name to "Jime Fiume."

115.    Di Angelo Publications republished "Street Smart" by Jime Fiume in June 2019.

116.    In or about August 2019, Plaintiff asked Defendant Di Angelo Publications to change the cover of the book. Defendant Di Angelo Publications submitted a new cover to

Plaintiff which he approved and Defendant Di Angelo Publications republished the book "Street Smart" by Jime Fiume with a different cover.

117.     In or about early September 2019, Plaintiff again asked Defendant Di Angelo Publications to change the cover of the book and also the title of the book.  Defendant Di Angelo Publications had the book republished again and ready to market by about September 20, 2019, with a different cover and a new title, "Born A  Burden, A Story of an American Orphan," by Jime Fiume.

118.     By this time Plaintiff had had a lawyer from New York City write Defendant Di Angelo Publications threatening a lawsuit for causing Plaintiff alleged stress and demanding damages of $200,000.00.  However, also by this time, Defendant Di Angelo Publications was already committed to submit the book to Amazon for sale and so Defendant Di Angelo Publications provided the book to Amazon.  On behalf of Defendant Di Angelo Publications, Defendant Schmidt attempted to talk with Plaintiff about marketing and promotion of the book and he advised her not to talk with him because he had hired a lawyer to sue.  Because of this threat of a lawsuit, Di Angelo Publications was prevented from pursuing any marketing or promotion in association with this re-launch of publication of the book.

119.     Defendant Di Angelo Publications had advised Plaintiff that changes to the book after initial publication increased costs and delayed marketing and promotion of the book.

120.     Plaintiff's repeated changes to the book, particularly changes in the cover, author name and title, prevented Defendant Di Angelo Publications from timely and effectively marketing and promoting the book after completion of the manuscript, which in turn resulted inevitably in reduced awareness of the book by the public and consequently reduced sales of the

book. Plaintiff's earlier repeated additions to the book had similarly delayed completion of the book's reaching the printing and publishing stage of completion.

121.     Thus if Plaintiff is alleging that Defendant Di Angelo Publications breached its contract by not selling more books or by not doing more marketing and promoting of the book, then Defendants allege that Plaintiff failed to meet a condition precedent to Di Angelo Publications' ability to perform its obligations under the contract. Plaintiff failed to approve the final book or the final cover of the book so that Defendant Di Angelo Publications could proceed with marketing and promotion of the book.

122.     If Plaintiff is alleging that Defendant Di Angelo Publications breached its contract by not selling more books or by not doing more marketing and promoting of the book, then Defendants allege that Plaintiff had repudiated the contract in September 2019 by its remarks and actions, including threat of a lawsuit.

123.     If Plaintiff is alleging that Defendant Di Angelo Publications breached its contract by not getting the book into the marketplace sooner, then Defendants allege that Plaintiff had caused and ratified the delays by Plaintiff's additions and changes to the manuscript, each which resulted in delays in completion of the manuscript and the readying of it for printing.

124.     If Plaintiff is alleging that Defendant Di Angelo Publications breached its contract by not getting the book into the marketplace sooner, then Defendants allege that Plaintiff had ratified or approved the delays by Plaintiff's changes in the cover of the book, changes in the author name on the book, and changes in the title of the book.

125.     By Plaintiff's refusing to discuss marketing and promotion with Defendant Schmidt on behalf of Defendant Di Angelo Publications, Plaintiff waived any rights that arise from the law or a contract with respect to such marketing or promotion of the book.

126.    Plaintiff's conduct in preventing Defendant Di Angelo Publications from performing under the contract estops Plaintiff from complaining about any deficiency in or lack of such performance.

127.    At no time did either Defendant ever advise Plaintiff that his book would be or could be a "best seller."

128.    Defendant Di Angelo Publications has substantially performed under the contract with Plaintiff.

129.    Defendant Schmidt is not a party to the contract between Plaintiff and Defendant Di Angelo Publications and cannot be liable for any alleged breach of such a contract.  Plaintiff has not shown any basis for alleging that Defendant Schmidt should be personally liable for any contracts entered into by Defendant Di Angelo Publications.

**Plaintiff's Cause of Action for Violation of the Texas Deceptive Trade Practices Act
Should be Dismissed Under Fed. R. Civ. 12(b)(6)**

***Plaintiff has failed to plead and cannot plead
circumstances constituting the necessary elements
for violation of the Texas Deceptive Trade Practices Act.***

130.    Plaintiff is a business consumer with assets of $25 million or more and thus is not a "consumer" for purposes of the Texas Deceptive Trade Practices Act (" the Act") and thus the Act does not apply to him.

131.    Plaintiff has not identified the specific acts or representations by either Defendant that Plaintiff alleges violated the Act.

132.    Plaintiff has not identified any specific acts or representations by either Defendant that Plaintiff alleges are covered by the Act or that are violations of the Act or that either Defendant knew, at the time of doing the act or practice complained of, was false, deceptive or unfair.  There have been no such acts by either Defendant that were false, deceptive, or unfair.

133.    A statement that is merely an interpretation of a contract that may subsequently be proven to be incorrect is not a violation of the Act.

134.    Plaintiff has not identified any injuries that it has allegedly incurred that are addressed specifically by the Act or that were caused by any alleged violation of the Act by either of Defendants.

135.    Plaintiff has not identified any violation of the Act by either Defendant that was a "producing cause" of any economic damages to Plaintiff.

136.    Plaintiff has not identified any violation of the Act by either Defendant that was a "producing cause" of any mental anguish damages to Plaintiff.

137.    Plaintiff has not identified any violation of the Act by either Defendant that caused damages to Plaintiff with the knowledge of that Defendant.

138.    Defendants maintain and allege that the contract between Plaintiff and Di Angelo Publications was bargained for at arm's length and freely, knowingly and intelligently negotiated and cannot have been a producing cause of any damages to Plaintiff.

139.    Defendants relied on representations by Plaintiff in making any representations or actions that Plaintiff alleges violated the Act.  Defendants made Plaintiff aware of such reliance by Defendants, timely and in writing.

140.    An alleged breach of a contract is not a violation of the Act.

141.    Plaintiff has not alleged the requisite elements to show or allege that either Defendant acted unconscionably.

142.    Plaintiff's claims under the Act are barred by the Statute of Limitations, having been brought later than two years after Plaintiff engaged Defendant Di Angelo Publications and

later than two years after Plaintiff knew or should have known of the act or acts or the representation or misrepresentations that Plaintiff claims or alleges violate the Act.

143.     Defendant Schmidt, who has interacted with Plaintiff only on behalf of Defendant Di Angelo Publications, cannot be individually sued under the Act.

**Plaintiff's Cause of Action for Conversion
Should be Dismissed Under Fed. R. Civ. 12(b)(6)**

***Plaintiff has failed to plead and cannot plead
circumstances constituting the necessary elements for conversion.***

144.     Plaintiff did not write any of the book in suit. Plaintiff did not design any of the covers for the book in suit.

145.     The entire work–the entire book in suit—is the work of Defendant Di Angelo Publications.

146.     Di Angelo Publications owns the copyright in the book in suit.

147.     Di Angelo Publications has rights to the book in suit under copyright law. Such rights include, among others, the right to have possession of the book in suit, the right to publish, display and distribute the book in suit, and the right to sell the book in suit.

148.     As copyright owner, Di Angelo Publications has the rights to proceeds for the sale of the book in suit.

149.     Because of Defendant Di Angelo Publications rights in and to the book in suit, Plaintiff cannot show that Defendant Di Angelo Publications has assumed and exercised dominion and control over the property in an unlawful and unauthorized manner to the exclusion of and inconsistent with Plaintiff's rights. Plaintiff cannot meet this necessary element of conversion.

150.    Plaintiff complains that Defendant Di Angelo Publications has not sold enough copies of the book and then Plaintiff complains that Defendant Di Angelo Publications has committed conversion by listing the book with Amazon for sale.  Plaintiff's inconsistent positions cannot put Defendant Di Angelo Publications on notice as to what Plaintiff wants.  Plaintiff's inconsistent positions cannot constitute any demand by Plaintiff for the property, and Plaintiff has made no such effective demand.

151.    Defendant Di Angelo Publications' actions respecting the book in suit, including the listing of the book for sale on Amazon, have been made in good faith, with a reasonable doubt as to Plaintiff's right, or even desire, to have the book removed from Amazon.  Defendant Di Angelo Publications' actions are not sufficient to constitute conversion.

152.    Neither Defendant has done any act that would result in Plaintiff's loss of the book in suit.

153.    Plaintiff has not compensated Defendant Di Angelo Publications for Defendant Di Angelo Publications' work in creating and publishing the book in suit, and thus Plaintiff has not established its rights to possess the book in suit to the exclusion of Defendant Di Angelo Publications.  Defendant Di Angelo Publications has continued to pay Plaintiff royalties for books sold.

154.    Defendant Schmidt has not independently, as an individual, been involved with the book in suit and Plaintiff has not alleged otherwise.  Defendant Schmidt's involvement with the book has solely been as president of Defendant Di Angelo Publications, acting on behalf of Defendant Di Angelo Publications.

155.    Plaintiff has no basis for a claim against Defendant Schmidt whatsoever.

**Plaintiff is Not Entitled to an Equitable Accounting**

156.     Neither Defendant has a fiduciary relationship with Plaintiff.

157.     Plaintiff's contract with Defendant Di Angelo Publications does not give Plaintiff the right to an equitable accounting.

158.     Plaintiff has an adequate remedy at law as to its alleged damages and consequently does not have a right to an equitable accounting.

### Plaintiff's Application for Injunctive Relief Should Be Denied

159.     Plaintiff has alleged no specific facts warranting injunctive relief.

160.     Through the guise of a claim for injunctive relief, Plaintiff seeks to have this Court rule so as to allow Plaintiff to avoid his obligation in his contract with Defendant Di Angelo Publication where under Plaintiff is obliged to buy-out" Defendant Di Angelo Publications' ongoing interest in half of the book royalties in exchange for full and complete ownership and control of the book.  Otherwise, Defendant Di Angelo Publications publishes, distributes and sells the book and provides Plaintiff half of the royalties from those sales.  Di Angelo Publications' profits for preparing and publishing the book lie in this clause of the contract.  By the injunctive relief he seeks, Plaintiff intends to unfairly deprive Defendant Di Angelo Publications of its profits for preparing and publishing the book.  Defendant Di Angelo Publications is entitled to its profits for preparing and publishing the book.

### Other Affirmative Defenses

161.     The Complaint fails to state any claims upon which relief can be granted.

162.     Defendants deny Plaintiff has sustained any damage, deny the nature and extent of damage (if any) and deny either Defendant caused Plaintiff to sustain any damage.

163.     Plaintiff had released the claims asserted in the Complaint.

164.     The claims are barred at least in part by the applicable statute of limitations.

165.     The claims are barred by the doctrines of consent, waiver, estoppel or acquiescence.

166.     The claims are barred by the doctrine of unclean hands and other equitable defenses.

167.     The claims are barred in whole or in part by preemption of the federal copyright laws.

168.     Applicable law does not permit the imposition of punitive damages.

169.     Plaintiff has suffered no harm as a consequence of the allegations set forth in the Complaint.

170.     Plaintiff is barred by contract from attempting to exercise ownership rights over the book in suit and related drafts of that book.

171.     Any right Plaintiff alleges to have "control" over the book and advertising the book is necessarily preempted by federal copyright laws.

172.     Any claims against Defendant Sequoia Schmidt (Defendant Sequoia Di Angelo aka Sequoia Schmidt) are barred because Schmidt is an individual separate and distinct from Defendant Di Angelo Publications, Inc., and there are no grounds upon which Plaintiff may pierce the corporate veil.

WHEREFORE, Defendants respectfully request that this Court:

i.       Enter judgment on Defendants' behalf on each of the causes of action in Fiume's Complaint.

ii.      Dismiss the Complaint with prejudice.

iii.     Award Defendants their costs and their attorney fees; and

iv.　　Grant Defendants such other and further relief as the Court deems fair and equitable.

## COUNTERCLAIMS

Defendant Di Angelo Publications, Inc. ("Di Angelo Publications") hereby asserts the following Counterclaims against Plaintiff Jime Fiume ("Fiume").

### Parties

173.　　Fiume is an individual residing in and/or having a principal office in Harris County, Texas.

174.　　Di Angelo Publications is a Texas corporation having its principal place in Houston, Texas.

### Background

175.　　Di Angelo Publications is a book publishing company.

176.　　Di Angelo Publications' typical clients are individuals who want Di Angelo Publications to help them write a book and then print, publish and market the book for them. The actual amount of writing and editing of each book that Di Angelo Publications does, through contractors and editors, varies greatly.

177.　　Sometimes Di Angelo Publications' clients look to Di Angelo Publications for all the writing of the book, even though the client will have an idea as to the overall content, theme or subject matter of the book. Jime Fiume was one such client.

178.　　Jime Fiume is an individual who has attained significant success in business, amassing a net worth that would place him in the category of an "accredited investor" under Securities and Exchange Commission rules. [Rule 501 of Reg. D of the Securities Act of 1933]. That is, Jime Fiume is a person whose financial sophistication and ability to sustain the risk of

loss of investment or ability to fend for himself renders the protections of the Securities Act's registration process unnecessary.

## COUNTERCLAIM ONE

## REQUEST FOR DECLARATORY JUDGMENT OF COPYRIGHT OWNERSHIP BY DI ANGELO PUBLICATIONS

179. When Jime Fiume first approached Di Angelo Publications about doing a book for him, he had no clear concept of what he wanted beyond that he wanted his life story to be published as a book. He did not know how to do it, and he did not want to write it himself.

180. Acting for Di Angelo Publications, Sequoia Schmidt, as principal and president Di Angelo Publications, advised Fiume that Di Angelo Publications could secure a ghostwriter, and handle editing, layout, cover design and registration of the book with booksellers.

181. Further acting for Di Angelo Publications, Sequoia Schmidt showed Fiume a mock contract – to apprise him of Di Angelo Publications' general terms.  He was eager to get started in the process and signed it on the spot.

182. This contract did not address ownership or assignment of copyrights. It did not address copyrights at all.

183. Di Angelo Publications and Mr. Fiume never talked about copyrights in the book.

184. After talking with Mr. Fiume about his life, and after conducting extensive research to locate a ghostwriter that she thought would be ideal for Fiume's book, Sequoia Schmidt, still acting for Di Angelo Publications, found a ghostwriter in New York, the city where Mr. Fiume grew up and thus a ghostwriter she thought would be familiar with the environment and circumstances related to Fiume's story.

185. Di Angelo Publications engaged that ghostwriter and arranged for him to come to Houston to meet and talk with Fiume, so the ghostwriter could write the story for the book. The

ghostwriter followed up that meeting with a number of phone conversations with Fiume and ultimately the ghostwriter provided Di Angelo Publications with a manuscript about 30,000 words in length.

186.    Fiume wanted the book to be longer. Di Angelo Publications then had its editor Elizabeth Zinn spend multiple weekly meetings talking with Fiume from which she wrote material expanding the book to 65,000 pages.

187.    Upon editor Zinn's completion of the manuscript, Fiume advised Di Angelo Publications through Sequoia Schmidt that he had left a large or at least significant portion of his life and story out of the book. He wanted advice on whether or not he should have the manuscript redone. He then proceeded to relay some of the missing information to Sequoia Schmidt.

188.    Sequoia Schmidt considered the information Fiume has omitted to be vital to his life story and she so advised Fiume on behalf of Di Angelo Publications accordingly.

189.    Fiume responded that Di Angelo Publications should revise and supplement the manuscript to include that information Fiume had failed to provide earlier.

190.    Di Angelo Publications' editor Zinn then revised and supplemented the manuscript to include the additional information.

191.    Prior to preparing the book for printing, Di Angelo Publications consulted with Fiume about the cover for the book and obtained his approval for the cover. Di Angelo Publications also obtained Fiume's approval for the title of the book. Originally, Fiume approved the book name to be "Street Smart, an Orphan's Story," and his name to be indicated as the author. Di Angelo Publications acted accordingly, preparing the book for printing.

192.     Then Fiume decided he wanted the author of the book to be called "Jim River" instead of "Jim Fiume."  Di Angelo Publications then published the book titled, "Street Smart, an Orphan's Story" by author "Jim River."

193.     After that publication, Fiume advised Di Angelo Publications that he wanted a different cover.  Di Angelo Publications revised the cover and obtained Fiume's approval of it and then republished the book.

194.     After that republication, Fiume advised Di Angelo Publications that he wanted still another cover for the book, and a different title of the book, and he wanted the author name to be "Jime Fiume."

195.     Di Angelo Publications again changed the cover and title of the book, changed the author, and again provided the new cover to Fiume for approval.

196.     Di Angelo Publications proceeded with publication of this version of the book.

197.     In total, Fiume signed off on or approved the publication of the book four times—causing Di Angelo Publications to redo the design, layout and cover each time. The changes were due to Fiume's wanting to change his name on the book to Jim River, then back again to Jim Fiume. Fiume also requested cover changes a total of six times. And Fiume ultimately changed the title of the book.

198.     While Di Angelo Publications made changes in the book cover and title at Fiume's request, and while he accepted the book for publication by Di Angelo Publications, Fiume did not write any part of the book, and he did not prepare or design the book covers.

199.     Di Angelo Publications has not only saved or "fixed" the book under copyright law on a computer hard-drive, but Di Angelo Publications has had three versions of the book printed in paper format as books for sale.

200.     As creator and author of the book, Di Angelo Publications has copyrights in the book, which is a literary work under copyright law, and which meets the originality requirement of that law.

201.     Di Angelo Publications has not assigned its copyrights in the book to Fiume.

WHEREFORE, Di Angelo Publications respectfully requests this Court enter a declaratory judgment that Di Angelo Publications is owner of all copyrights in the book and has all the rights of such ownership that copyright law provides, under 28 U.S.C. § 101 et seq.

## COUNTERCLAIM TWO

## BREACH OF CONTRACT BY JIME FIUME

202.     Di Angelo Publications incorporates by reference the allegations contained in Paragraphs 173- 200 herein as if fully set forth here.

203.     Di Angelo Publications and Fiume entered into an agreement where under Di Angelo Publications would write and otherwise prepare, print, publish, promote, market, and sell a book based on Fiume's life story.

204.     Under that contract, Fiume would pay for expenses (with surcharge to cover Di Angelo Publications' costs of obtaining, handling, receiving, or other processing the items expensed) associated with Di Angelo Publications' preparation, printing, publishing, promoting, marketing, and selling the book.

205.     Di Angelo Publications and Fiume agreed that Di Angelo Publications' profits for its work on the book would be from receiving half of any and all royalties for sales of the book. Fiume would receive the other half of such royalties.

206. Di Angelo Publications and Fiume agreed that Fiume could "buy-out" Di Angelo's interest in the book royalties upon his payment of a lump sum "buy-out" amount to Di Angelo Publications.

207. In keeping with the terms of the contract, Di Angelo Publications began promoting the book as soon as Di Angelo Publications published it.

208. Di Angelo Publications arranged for a book signing featuring Fiume and the book at River Oaks Bookstore. As part of this promotion, River Oaks Bookstore acquired about 2000 copies of the book from Di Angelo Publications.

209. After the book signing at River Oaks Bookstore, Fiume asked Di Angelo Publications to change the cover and author name of the book.

210. River Oaks Bookstore then returned the books because the cover and author change would nullify the prior promotion of the book and make the previously promoted version of the book difficult for it to sell.

211. Di Angelo Publications had to refund monies for the books to River Oaks Bookstore and the books then became an expense item for reimbursement by Fiume.

212. Even though Fiume had caused the expense of the returned books, he refused to pay the expense, in breach of his agreement with Di Angelo Publications to pay expenses.

213. Fiume requested Di Angelo Publications make changes in the cover of the book at least six times, the author of the book three times, and the title of the book twice, all in less than a year after initial completion of the book.

214. Fiume's repeated changes in the cover, title and author name of the book prevented Di Angelo Publications from effectively marketing and promoting the book, as

Fiume's requested changes would effectively nullify the marketing and promotions made for the previous version of the book, and would also cause publishing delays.

215.    Nevertheless, Fiume complained that Di Angelo Publications had not adequately marketed and promoted the book.

216.    Fiume complained that Di Angelo Publications had not made the book a "best seller."

217.    Fiume complained that Di Angelo Publications had not sold "enough" copies of the book, even though Di Angelo Publications and Fiume had never agreed on a specific number of copies of the book that would be sold or a time when a certain number of books would be sold.

217.    Di Angelo Publications never told Fiume that the book would be a "best seller" or that Di Angelo Publications would guarantee the sales of a specific number of copies of the book.

218.    Instead of giving Di Angelo Publications a reasonable amount of time to market and promote the book without Fiume requesting changes, Fiume threatened a lawsuit against Di Angelo Publications, further hindering Di Angelo Publications efforts to market and promote the book.

219.    Although Di Angelo Publications has already substantially performed under the agreement with Fiume, Fiume's lawsuit seeks to deprive Di Angelo Publications of any profits for its efforts in preparing and publishing, republishing and again republishing the book for Fiume.

220.    Fiume should not be heard that Di Angelo Publications has not sold a satisfactory number of copies of the book when Fiume prevented Di Angelo Publications from effectively marketing and promoting the book.

221.    Fiume has acted in bad faith under the agreement with Di Angelo Publications.

222.    Fiume has materially breached his agreement with Di Angelo Publications in preventing Di Angelo Publications from doing the very marketing and promotion of which Fiume is complaining that Di Angelo Publications has not done enough.


WHEREFORE, based on the foregoing, Di Angelo Publications respectfully requests this Court:

(i)     Enter judgment for Di Angelo Publications for Breach of Contract by Fiume;

(ii)    Award Di Angelo Publications its damages, legal fees and costs arising out of this matter; and

(iii)   Award Di Angelo Publications such other relief as this Court deems just and appropriate.

## JURY DEMAND

Defendants hereby request a trial by jury on all claims triable by jury herein.

Dated:  February 24, 2020

Respectfully submitted,
/s/*Karen B. Tripp*
Karen B. Tripp, Attorney at Law
Texas State Bar No.:  03420850
Southern Dist. of Texas No. 2345
4265 San Felipe, Suite 1100
Houston, TX  77027
(713) 658-9323 office phone
(713) 968-9888 fax phone
tripp.karen@gmail.com
Attorney in Charge for Defendants
**Di Angelo Publications, Inc. and
Sequoia Schmidt**

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **<u>February 24, 2020</u>**, a true and copy of the foregoing DEFENDANTS DI

ANGELO PUBLICATIONS, INC. AND DEFENDANT SEQUOIA SCHMIDT'S ANSWER,

AFFIRMATIVE DEFENSES AND COUNTERLCAIMS IN RESPONSE TO PLAINTIFF'S

ORIGINAL PETITION is being served on counsel for Plaintiff, Jimi Fiume: Melissa Sternfels

and Eric Lipper, Hirsh & Westheimer, P.C., 1415 Louisiana, 36th Floor, Houston, Texas 77002,

at elipper@hirschwest.com and msternfels@hirschwest.com.

*/s/karen tripp*
Karen B. Tripp